# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**Elaine L. Chao, Secretary of Labor,**
**United States Department of Labor,**

        **Plaintiff,**

-v-
                         **Case No. C-2-05-0826**
                         **JUDGE SMITH**
                         **Magistrate Judge Abel**

**Norse Dairy Systems,**

        **Defendant.**

## OPINION AND ORDER

Plaintiff Elaine L. Chao, the Secretary of Labor, brings this case against Defendant Norse Dairy Systems alleging that Norse terminated a former employee, Scott McManis' employment, in retaliation for reporting an alleged safety violation to the Occupational Safety and Health Administration ("OSHA"). This matter is before the Court on Defendant Norse Dairy Systems' Motion for Summary Judgment (Doc. 46); Plaintiff Elaine L. Chao, Secretary of Labor's Motion for Summary Judgment (Doc. 52); Defendant Norse Dairy Systems' Motion to Strike the Affidavit of Kathy Steward attached to Plaintiff's Motion for Summary Judgment (Doc. 55); and Defendant Norse Dairy Systems' Motion for Discovery (Conditional) to Re-Open and for Sanctions (Doc. 61). All responses and replies have been filed to each of the aforementioned motions and they are all ripe for review. For the reasons that follow, the Court **GRANTS** Defendant's Motion for Summary Judgment; **DENIES** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion to Strike; and **DENIES** Defendant's Motion for Discovery.

## I.    BACKGROUND

Plaintiff, Elaine L. Chao, the Secretary of Labor, ("Plaintiff" and/or "Chao"),initiated this Complaint pursuant to Section 11(c) of the Occupational Safety and Health Administration ("OSHA"), 29 U.S.C. §660(c), on behalf of Scott McManis ("McManis") alleging that Defendant Norse Dairy Systems ("Defendant" and/or "Norse") terminated him in retaliation for filing a complaint with OSHA.

### A.    McManis' Employment at Norse

Defendant Norse operates a facility in Columbus, Ohio which produces paper wrappings, or sleeves for ice cream products, such as Drumsticks.  The sleeves are formed and cut from paper rolls on machines operated by Norse's production employees. The machine operators keep the machines running, and catch the paper when it comes out of the machines, after it has been formed. (*See* Taylor Dep. at 7).  When the machine jams, the operator cleans out the machine manually with a putty knife.

Carl Muncy has been the plant manager of this facility for four years. (*See* Muncy Dep. at 5).  Terry Poling has been a production supervisor with Norse for 23 years. He oversees production, manages the production employees, and performs various supervisory duties. (*See* Poling Dep. at 5-6).  When Norse hires a new production employee, he or she is assigned to an experienced production employee, who serves as a trainer.  The trainer devotes as much time as required to train that employee to operate one of the manufacturing machines.  When the employee is ready, he is placed on one machine by himself with guidance from instructors, and then graduates from that to full operation of two machines. (Poling Dep. at 10).

Scott McManis was hired by Norse to operate the rim roll machines which make the wrappers for drumsticks. McManis began his employment with Norse on January 5, 2004. He was hired for second shift, working 3:00 p.m. to 11:00 p.m. Norse assigned Nancy Taylor to train McManis.

Nancy Taylor is one of the employees who serves as a trainer. She has been a trainer for 19 of the 20 years she has worked at Norse as a machine operator. (Taylor Dep. at 5-6). Taylor has a routine for how she trains new production workers: "I introduce myself, and I take them over to my workstation, and then before I start my machine up, I show them where not to stick their fingers at. I show them safety. Safety is the first thing here at Norse, and I – the first day I don't let them touch the machine at all. I just let them pick up the sleeves, and I show them what they're looking for as far as a bad sleeve and a good sleeve, and then the second day I start them on the machine." (Taylor Dep. at 6). The length of training depends upon the person. But until the person is comfortable operating the machine on his or her own, Taylor remains with them for the entire shift. (Taylor Dep. at 7).

McManis' recognized immediately after starting his job with Norse that the rim roll machine was dangerous. (McManis Dep. at 24, 29). Taylor confirmed that McManis expressed his concern to her that the machine was dangerous. (Taylor Dep. at 9). Taylor explained the machine guarding, and assured him that the machine was, in fact, safe. (Taylor Dep. at 9-11). Nevertheless, McManis refused to operate the rim roll machine in the required manner, citing safety concerns. McManis repeatedly shut down the machine to clear the jams. Taylor reported this to a co-worker, Randy Holly, who was a non-supervisory lead person. (Taylor Dep. at 11). Holly, in turn, reported to Poling that McManis was refusing to follow basic training instructions

-3-

from Taylor on how to do his job, that he did not seem willing to accept authority, and that he seemed to have a bad attitude. (Poling Dep. at 7-9).

After Poling's first conversation with Holly, Poling told him he would keep his eye on the situation. (Poling Dep. at 11-12).  As Poling describes, "it's status quo that sometimes a new employee will come in thinking they know more than the trainer. . . ." (Poling Dep. at 11).  While Poling was McManis' supervisor, he obtained all his information regarding McManis from Holly who obtained all his information from Taylor.

Taylor attempted to continue to train McManis, but she claims she became fearful of him. Taylor testified that McManis was "getting mad and aggravated and he had a temper, you could tell, and his face would get all red." (Taylor Dep. at 16).  Taylor went back to Holly to tell him that she did not want to train McManis anymore because of his temper, and because he did not seem to want to "listen to a woman."  (Taylor Dep. at 17).  Holly, in turn, went back to Poling to tell him that the problems with McManis were continuing. (Poling Dep. at 14). This time, Poling called McManis into his office, and "explained to him the importance of following all instructions from his trainer." (Poling Dep. at 15).  McManis assured Poling that he would try to do better. He did not at any time during that meeting express any concerns about the safety of the machines, or tell Poling why he would not follow Taylor's instructions. (Poling Dep. at 15-16).

After Taylor refused to train McManis, Poling assigned Matt Moore to train McManis. Poling also spoke to the Norse Plant Manager Carl Muncy about the problems with McManis. (Poling Dep. at 18).  He told him that he had brought McManis into his office because of his poor attitude and his failure to follow instructions. (Poling Dep., p. 19). Muncy spoke directly with Taylor to learn more about the issue.  Taylor told him that McManis had a problem keeping

his machine running – it was jamming up because he was failing to pay attention to it.  (Muncy

Dep. at 10-11). Taylor reported to Muncy that instead of paying attention to the rim roll

machine, McManis would go off and rearrange cardboard. (Muncy Dep. at 11). None of the

individuals Muncy spoke to about McManis told him that McManis had any safety concerns.

(Muncy Dep. at 14).

While new hires, such as McManis, are not required to meet any production quotas,

Muncy reviews production reports of the employees.  According to Muncy, McManis' job

performance was "very low."  (Muncy Dep. at 9).  Muncy also concluded that McManis had

anger problems:

> During the first conversation I had with Terry Poling, he brought the subject up
> about McManis' attitude; he seemed to get angry, had a short fuse. And then
> Nancy, when I had my first talk with Nancy, she had told me of an incident where
> he hadn't been paying attention to the machine. He was over doing something
> with cardboard that he shouldn't have. The machine jammed up and went down.
> She walked over and was just instructing him on where he should have been and
> why that happened, and he became angry and verbal and stormed off the
> production floor . . . .

(Muncy Dep. at 13).

After McManis was reassigned, his temper did not seem to abate. He was stationed on the

machine between Taylor's and another female coworker. Taylor could see that McManis

continued to get mad and shut his machine down. (Taylor Dep. at 19).  Muncy describes one

incident where McManis "became angry and walked off the line and went and took an unplanned

break or something of that nature until he calmed down and came back."  (Muncy Dep. at 14).

Following that incident, Muncy fired McManis because of his anger problems, his

attitude, his inability to meet production requirements, and because he "did not have the ability

to take direction from females."  (Muncy Dep. at 6-7).  Muncy alone made the decision. (Muncy

Dep. at 6). Muncy, however, stated that he did not personally observe McManis display any behavioral problems while on the job. (Muncy Dep. at 7). In fact, Poling, McManis' supervisory, was on vacation at the time, and had no input on the termination decision. (Poling Dep. at 7, 24).

McManis, however, asserts that his production was as good as other Norse employees. McManis stated that he produced twenty to twenty-five boxes of product per day. (McManis Dep. at 48). Taylor stated that she produced twenty to twenty-seven boxes of product per day. (Taylor Dep. at 11). Taylor even testified that McManis was a good worker, and would have succeeded had he not kept shutting his machine off. (Taylor Dep. at 18).[1]

## B.      The OSHA Investigations

McManis was terminated by Norse on February 13, 2004. Four days later, he filed a whistleblower complaint with OSHA, alleging that his termination was in retaliation for his having filed an earlier report with the agency of an alleged safety violation. (*See* Steward Dep. at 37-38, Ex. 16). The safety complaint had been filed on January 6, 2004 at 3:15 p.m. – literally 24 hours after McManis started work at Norse. (McManis Dep. at 40-41). OSHA health and safety specialist Larry Johnson was assigned to investigate, and conducted an unannounced inspection and interviews at Norse beginning on January 9, 2004. (Johnson Dep. at 6, 13).

The whistleblower complaint was assigned to OSHA investigator Kathy Steward. The notes from Steward's initial telephone conversation with McManis do not reflect any evidence whatsoever that anyone at Norse either knew or suspected that McManis had filed the January 6

---

[1] The Court has reviewed Taylor's statement taken during the OSHA investigation and it is consistent with her deposition testimony.

complaint – even though he alleged that his termination was in retaliation for having made it.
(Steward Dep. at 44).  McManis told her only that he had complained about the machine to
Taylor and to another machine operator, Christopher Davis. (Steward Dep. at 46, 50, 51).  Her
notes reflect that McManis "**figured** that Taylor told Muncy about his concerns."  **Not** that he
believed Muncy then "figured" he filed the January 6 OSHA complaint. . .just that McManis
"figured" Taylor told Muncy he had complained about the machine. *Id.*  McManis had no facts
to support this speculation – just his termination. (Steward Dep. at 49, emphasis added).

      McManis gave two written statements as part of this investigation. (Steward Dep. at 53-
54, Exs. 21, 22). Once again, McManis alleged only that he had complained about the machine
to Taylor and another machine operator.  *Id.*  He did not contend that management was aware of
his concern, or that anyone knew that he filed the January 6 OSHA complaint.  There was
certainly no evidence gained or shared during the investigation of the January 6 complaint that
linked McManis to the complaint.  The identity of the employee who has reported an alleged
violation is never given to the employer by OSHA. (Johnson Dep. at 9-10, 15).  Johnson verified
in his deposition that there was nothing issued by him or anyone from OSHA prior to, during, or
subsequent to the inspection that would have identified the individual who made the complaint.
(Johnson Dep. at 15-16).

      Critically, Johnson admitted that there was nothing during the entire course of his
investigation to give him any impression that the plant manager Muncy (who terminated
McManis) had any suspicion that McManis had filed the OSHA complaint. (Johnson Dep. at
18). In fact, he admitted that none of the managers he spoke with said anything during the entire
investigative process that would lead him to believe they suspected McManis filed the OSHA

complaint.  (Johnson Dep. at 21).  The same is true for the non-managerial employees Johnson interviewed during his investigation.  In fact, McManis' name was "never brought up" in any of Johnson's conversations with Norse employees. (Johnson Dep. at 23).  Johnson has no evidence that Taylor ever told any of the managers at Norse that McManis had concerns about the machines, and he never formed any opinion about whether he believed Norse knew who filed the complaint with OSHA.  (Johnson Dep. at 26-28).

When Steward began the whistleblower investigation, she reviewed Johnson's inspection narrative which had been prepared as part of Johnson's investigation.  (Steward Dep. at 28, Ex. 6).  She noted that Johnson had, in fact, been told that "complainant had a bad attitude and did not get along with others."  *Id.* During Steward's investigation, none of the information she gathered provided any evidence that Muncy or any other Norse manager knew or suspected that McManis would possibly have been the employee who filed the January 6 complaint.

Steward took a statement from Muncy, whom she understood to be the sole decision maker with regard to McManis. (Steward Dep. at 62, 63, Ex. 24).  Muncy was clear that no one ever told him that McManis had any concerns about the safety of the machines. *Id.*  In fact, Steward admits that Muncy told her he did not in any way suspect that McManis had filed the OSHA safety complaint.  (Steward Dep. at 64).  Muncy told her: "it never crossed my mind because he had only been employed for three or four days." (*See* Steward Dep. Ex. H, p. 4). Muncy also gave Steward several examples of the problems McManis exhibited in working with women. (*See id.*, p. 2).  Muncy also told Steward about the episode in which McManis became angry when he had to work with Taylor again after he had been reassigned to a male trainer. Steward interviewed and took a statement from Poling, who also told her that McManis had

anger problems, and problems taking instructions from women. (Steward Dep. at 73, Ex. 26).

Further, Poling told Steward that McManis had never shared any concerns about the machines with him.  Poling also told her that no one else had ever told him that McManis thought the machines were unsafe. (*See* Poling Dep. Exhibit I, pp.2, 4).  Ray Cross, the production manager at Norse, told Steward: "I was present when OSHA had conducted their OSHA inspection. No one ever told me that they had suspected that McManis had filed the OSHA complaint. No one ever told me that McManis had complained that he felt the machines were unsafe."  (Steward Dep. at 68, Ex. 25).

Steward admits that her "evidence" that anyone at Norse suspected that McManis filed the January 6 complaint was the fact that McManis told two co-workers – Nancy Taylor and Christopher Davis – that he thought the machines were unsafe. (Steward Dep. at 78).  She also admits that her conclusion was based on sheer speculation:

> Q.    So you looked at other events that occurred and, then based upon those events, **guessed** that managers suspected that Mr. McManis filed the OSHA complaint?
>
> A.    Yes.
>
> Q.    And to your recollection, the only names you recall Mr. McManis telling you that he voiced concerns about the machines to were Nancy Taylor and Chris?
>
> A.    Yes.

(Steward Dep. at 78).

In fact, Steward admits that during the course of her investigation, no employees of Norse told her that they knew who filed the OSHA complaint, nor did they say who they suspected filed the complaint.   (Steward Dep. at 77-78).

As for McManis, he freely admits that he never expressed any safety concerns to Muncy. (McManis Dep. at 30-31). He also has no recollection of having any conversations with Poling about any safety concerns. (McManis Dep. at 30). In fact, other than Taylor, McManis cannot identify a single other person that he believes he spoke with about the safety of the machines. (McManis Dep. at 31). Further, McManis admits that he has no direct knowledge of whether or not Taylor ever told Poling about his concerns about the safety of the machines. (McManis Dep. at 32). Instead, he testified that it "would be my guess" that she told him that information. (McManis Dep. at 32-33). The same is true with regard to Muncy. (McManis Dep. at 33). Therefore, based on McManis' own testimony, he never shared any of his concerns about the safety of the machines with any managerial employees. (McManis Dep. at 51-52).

McManis has no evidence whatsoever to suggest that anyone at Norse knew, or even had any reason to suspect, that he was the one who made the OSHA complaint:

Q.      Now, did you tell anyone at Norse that you were making that complaint?

A.      No.

Q.      After you made the complaint to OSHA, did you ever tell anyone at Norse that you had made the complaint?

A.      No.

                                        ***

Q       . . . As we sit here today, do you have any knowledge of whether Carl Muncy ever knew, during the entire time you worked at Norse, that you had made a complaint to OSHA?

A.      Not to my knowledge.


Q.      And during the entire time you worked at Norse did you have any knowledge of whether Terry Poling knew you had made a complaint to OSHA?

-10-

A.    Not to my knowledge.

Q.    During the entire time you worked at Norse, did you have any knowledge
      as to whether Nancy Taylor knew you had made a complaint to OSHA?

A.    Not to my knowledge.

Q.    In fact, do you know whether or not there was anyone at Norse who knew
      you made a complaint to OSHA during the entire time you worked there?

A.    No.

(McManis Dep. at 42-44).


## II.    SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which

provides:

> The judgment sought shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine
> issue as to any material fact and that the moving party is entitled to
> judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate,

however, if the opposing party fails to make a showing sufficient to establish the existence of an

element essential to that party's case and on which that party will bear the burden of proof at

trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Matsushita Electric Industrial Co.,*

*Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986).

-11-

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000).[2]  The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe.  *Id.*  Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses.  *Id.*

The Sixth Circuit Court of Appeals has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989).  The court in *Street* identified a number of important principles applicable in new era summary judgment practice.  For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment.  *Id.* at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed

---

[2]  *Reeves* involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same.  One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, *Reeves*, 530 U.S. at 150.  In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party.  *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). As such, *Reeves* did not announce a new standard of review for summary judgment motions.

-12-

fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (*quoting Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (*quoting Matsushita*, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

## III.   DISCUSSION

Both Plaintiff Elaine L. Chao, Secretary of Labor and Defendant Norse Dairy Systems have both moved this Court for summary judgment (Docs. 46 and 52). There are also two discovery motions pending that are related to the motions for summary judgment that must be addressed. As set forth below, the Court finds that Defendant's Motion for Summary Judgment is **GRANTED**. Accordingly, Plaintiff's Motion for Summary Judgment is **DENIED**. Defendant's Motion to Strike and Motion to Re-Open Discovery are also **DENIED**.

### A.    Motion to Strike and Motion to Re-Open Discovery and for Sanctions

As a preliminary matter, Defendant Norse has moved to strike Kathy Steward's Affidavit

and the attached statement of Nancy Taylor (attached in support of Plaintiff's Motion for Summary Judgment).   Defendant asserts that it attempted to discover information about Steward's conversations with Taylor and to obtain a copy of the statement Steward had taken from Taylor. Plaintiff, however, argued during discovery that such information was privileged.  The parties even discussed this issue with the Court and the Court upheld Plaintiff's right to assert the privilege. After asserting the privilege during discovery, and refusing to provide a copy of Taylor's statement, Plaintiff has now attached the statement to Steward's affidavit in support of the summary judgment motion.  Defendant actually states that the statement is innocuous, but nonetheless argues that such conduct cannot be tolerated.

Rule 12(f) of the Federal Rules of Civil Procedure provides, "upon motion made by a party . . . the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Such motions are generally viewed with disfavor and are rarely granted.  *See AT&T Global Information Solutions Co. v. Union Tank Car Co.*, Case No. C2-94-876, 1997 U.S. Dist. LEXIS 6090, *6-7 (S.D. Ohio Mar. 31, 1997) (J. Holschuh) (*citing Brown and Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953)); *Morrow v. South*, 540 F. Supp. 1104, 1111 (S.D. Ohio 1982)(J. Rice); *Shields v. UNUM Provident Corp.*, 2007 U.S. Dist. LEXIS 17836 (S.D. Ohio 2007).

Plaintiff argues that she waived the privilege when she provided the name of the informant to Defendant, when the informant, Nancy Taylor was deposed, and when Nancy Taylor's statement was published.  Plaintiff asserts that it is the right of the Government to withhold informants names and communication with such informants.  However, once the

informant has been disclosed, the privilege is no longer applicable. *See Roviaro v. United States*, 353 U.S. 53 (1957). Plaintiff further argues that there was no unfair surprise or prejudice to Defendant. Taylor is a current employee of Norse, and Norse was given, prior to the summary judgment motions, all the details of the investigation and the facts surrounding Taylor's statement through Taylor's deposition.

The Court agrees with Plaintiff that there was no unfair surprise or prejudice to Defendant Norse. Taylor was deposed prior to the filing of the motions for summary judgment. Further, the statement was attached to Plaintiff's Motion for Summary Judgment. Defendant had ample time to review the statement and respond to any arguments relying on the statement in its responsive briefs. Therefore, because Defendant admits that the statement is innocuous and the Court finds that there was no unfair surprise or prejudice to Defendant, Defendant's Motion to Strike is **DENIED**.

Defendant Norse has also filed a Conditional Motion to Re-Open Discovery and for Sanctions (Doc. 61). Defendant Norse is essentially requesting that the Court allow them to do additional discovery if their Motion to Strike is denied and/or if their Motion for Summary Judgment is denied. Defendant asserts that it will need to obtain all the witness statements previously withheld, and to depose Plaintiff's witnesses who previously refused to answer questions regarding these statements. Defendant also seeks sanctions, requesting the Court order Plaintiff to pay the costs incurred by Norse in preparing this motion and to do the additional discovery.

Plaintiff again asserts that there has been no unfair surprise or prejudice to Defendant.

-15-

All the information surrounding Taylor's statement and all the details of the investigation were provided during Taylor's deposition. Further, Taylor is a current employee of Defendant Norse, and they could question her regarding her statement or the investigation at any time. The Court again agrees with Plaintiff. Regardless of the outcome of the summary judgment motions, there is no need to re-open discovery, especially as it relates to Taylor's statement. Taylor is an employee of Defendant Norse, and it is not necessary to re-open the discovery period for Defendant to question her. Norse can question any of its employees at any time. Defendant's motion to re-open discovery is therefore **DENIED**. Accordingly, Defendant's motion for sanctions is also **DENIED**.

**B.      Plaintiff's Retaliation Claim**

Plaintiff Chao asserts a single claim against Defendant Norse: that Norse terminated McManis in retaliation for reporting an alleged safety violation to OSHA, in violation of 29 U.S.C. §660(c)(1), and now seeks summary judgment on that claim.[3]

Section 11(c) of OSHA, 29 U.S.C. §660(c)(1) provides:

> No person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act or has testified or is about to testify in any such proceeding or because of the exercise by such employee on behalf of himself or others of any right afforded by this Act.

Further, Section 11(c)(2) of OSHA, 29 U.S.C. § 660(c)(2) provides:

---

[3] Interestingly, Plaintiff also seeks summary judgment on a new claim that has never been asserted in this case: that Norse terminated McManis because he refused to operate dangerous machinery. Therefore, the Court will not consider this claim as Plaintiff has failed to plead this claim in accordance with the Federal Rules of Civil Procedure.

> Any employee who believes that he has been discharged or otherwise
> discriminated against by any person in violation of this subsection may … file a
> complaint with the Secretary alleging such discrimination. Upon receipt of such
> complaint, the Secretary shall cause such investigation to be made as he deems
> appropriate. If upon such investigation, the Secretary determines that the
> provisions of this subsection have been violated, he shall bring an action in any
> appropriate United States district court against such person …. [4]

*See also Wood v. Dep't of Labor & Elaine Chao*, 275 F.3d 107, 111 (D.C. Cir. 2001).

The announced purpose of OSHA's Act is to "assure so far as possible every working man and woman in the Nation safe and healthful working conditions."  29 U.S.C.A. § 651(b) (1985).  The Act is safety legislation that is remedial and preventative in nature and is to be liberally construed to effectuate its congressional purpose.  *See Whirlpool Corp. v. Marshall*, 445 U.S. 1, 13 (1980).  The anti-retaliation provision, §11(c), was intended to protect employees from adverse employment actions if they are suspected of having engaged in protected activity.

Congress recognized employees to be a valuable and knowledgeable source of information regarding work place safety and health hazards. *See* S. Rep. No. 1282, 91st Cong. 2d Sess. 11 (1970). "Congress was aware of the shortage of federal and state occupational safety inspectors, and placed great reliance on employee assistance in enforcing the Act."  *Marshall v. Whirlpool Corp.*, 593 F.2d 715, 722 (6th Cir. 1979), aff'd, 445 U.S. 1 (1980) (the Court noted "it

---

[4]  Section 11(c)(2) designates the Secretary as the official who decides whether and to what extent an investigation is "appropriate" and, based on that investigation, whether the complainant has made out a claim that his employer discriminated against him, by discharge or otherwise, for his protected activity. 29 U.S.C. § 660(c).  Only the Secretary of Labor is authorized to "determine" whether the "subsection has been violated."  The Secretary has delegated to the Assistant Secretary for Occupational Safety and Health "the authority and assigned responsibility for administering the safety and health programs and activities of the Department of Labor … under … the Occupational Safety and Health Act of 1970."  *See* Secretary's Order 3-2000, 65 Fed. Reg. 50017 (August 16, 2000); *see also Wood v. Dep't of Labor & Elaine Chao*, 275 F.3d 107, 112 (D.C. Cir. 2001) .

is clear that without employee cooperation, even an army of inspectors could not keep America's work places safe.") As such, Congress provided, among other things, a mechanism by which employees could file complaints. 29 U.S.C.A. § 657(f). This provision allows a complaining employee to elect to file his or her complaint confidentially and prohibits the Secretary from disclosing the identity of such complaining employee. *Id.*

In analyzing such a claim for retaliation in violation of OSHA 11(c), the analysis is similar to other federal statutes which protect against discrimination, including Title VII of the Civil Rights Act of 1964. *See Kennard v. Louis Zimmer Communications, Inc.*, 632 F. Supp. 635, 638 (E.D. Pa. 1986). However, under OSHA, the Secretary must prove that an employee is in the class of individuals whose conduct is protected by the Act and prove the causal connection between the discharge and the protected conduct, whereas the other discrimination statutes require that a plaintiff prove the causal connection between the discharge and the possession of a specific characteristic such as race, age, handicap and so on. *Id.*

The Court must first determine whether Plaintiff can demonstrate retaliation with direct evidence: evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). Plaintiff, however, has failed to set forth any direct evidence that would lead the Court to the conclusion that McManis' filing the OSHA complaint was at least a motivating factor in Norse's decision to terminate his employment.

Absent direct evidence of retaliation, the Plaintiff must prove a *prima facie* case of retaliation by using circumstantial evidence. In order to do so, Plaintiff must demonstrate that: (1) he engaged in a protected activity; (2) the exercise of protected rights was known to

-18-

defendant; (3) the defendant subsequently took adverse employment action against the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action. *Morris v. Oldham Co. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000); *see also Richards v. Dept. of the Army*, 2007 U.S. App. LEXIS 3594 at *19 (6th Cir. Feb. 15, 2007).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant who must articulate a legitimate, non-discriminatory, and non-retaliatory reason for the adverse action against plaintiff. *Morris*, 201 F.3d at 793; *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993). If the defendant can establish such a reason, then the burden shifts back to the plaintiff to prove that the defendant's proffered reason is pretextual. *Id.*

### 1.    Prima Facie case of Retaliation

Defendant Norse argues that Plaintiff cannot establish a *prima facie* case of retaliation because she cannot demonstrate that the Defendant was aware of the protected activity, namely McManis filing the OSHA complaint. Defendant further argues that it had legitimate, non-retaliatory reasons for all of its actions regarding McManis and that Plaintiff cannot establish that such actions are pretextual. This Court agrees.

#### a.    Knowledge of Exercise of Protected Rights

Plaintiff asserts that McManis engaged in protected activity when he filed a complaint with OSHA regarding the safety of the rim roll machine. Plaintiff asserts that Defendant Norse knew McManis called in the OSHA complaint because he was a new employee, the only employee to express concern to Norse about the safety of the rim roll machine, the rim roll machines were a focus of the resulting OSHA inspection, and Norse management stated it knew

who called in the OSHA complaint.

There is no dispute that McManis engaged in protected activity when he filed the OSHA complaint expressing his concern with the safety of the rim roll machine.  Nor is there any dispute that McManis was subjected to a materially adverse employment action, namely he was terminated.  The next question is whether Defendant Norse was are that McManis was the one who filed the complaint.  Plaintiff asserts that "the record is replete with circumstantial evidence establishing Norse knew McManis called in the OSHA complaint."  (Pl.'s Mot. for Summ. J. at 15).  However, Plaintiff fails to cite to exactly where in the record this circumstantial evidence is.  Plaintiff states that McManis is a new employee, which is not in dispute.  In addition, Plaintiff asserts that McManis called in the OSHA complaint on his second day of employment and three days later, OSHA inspected the Norse facility, which again is not in dispute.  Plaintiff also states that "McManis was the only Norse employee to openly raise safety concerns."  (Pl.'s Mot. for Summ. J. at 15, *citing* Johnson Dep. at 18).  Plaintiff claims Norse knew McManis called in the OSHA complaint because Plant Manager Muncy told the OSHA investigator he knew who called in the complaint.  (Pl.'s Mot. for Summ. J. at 15, *citing* Johnson Dep. at 18-20).

Defendant Norse, however, argues that there is no evidence that anyone at Norse suspected that McManis filed the OSHA complaint.  Notably, Defendant cites to the same pages of the Johnson Deposition for this proposition.  (*See* Def.'s Mot. for Summ. J. at 16, *citing* Johnson Dep. at 18-21, 23). Defendant argues that Plaintiff's case is based on speculation and conjecture.  This Court agrees, and reliance on speculation and conjecture is not sufficient to survive summary judgment.  "[W]here 'the decision-maker denies having knowledge of the

alleged protected activity, the plaintiff must do more than offer only conspiratorial theories...or

flights of fancy, speculations, hunches, intuitions or rumors.'" *Cain v. Potter*, 2006 U.S. Dist.

LEXIS 82385 at *17 (N.D. Ohio Oct. 31, 2006), *quoting Proffitt v. Metro. Gov't. of Nashville

*and Davidson Co.*, 150 Fed. Appx. 439, 443 (6th Cir. 2005).

The Court has carefully reviewed the deposition of Larry Johnson, the OSHA

investigator.  Mr. Johnson did state that he recalled Mr. Muncy saying "oh, I know who did

this," but he didn't say a name.  Mr. Johnson then followed that statement up with it was very

ambiguous and he did not put a lot of weight on it.  (Johnson Dep. at 18-19).[5]  Mr. Johnson was

then asked about other managerial employees and he responded that he did not remember them

saying much.  (Johnson Dep. at 20-21).  Finally, Mr. Johnson was asked:

> Q.     With regard to the employees that you interviewed, the nonmanagerial
>        employees that you interviewed, was there anything that any of them said
>        or did that led you to believe that they suspected that Mr. McManis filed
>        this complaint?
>
> A.     No.  They didn't – – no.  They had no idea.

(Johnson Dep. at 21).

The Court does not find Plaintiff's speculation persuasive.  Simply because Mr. Muncy

stated to Mr. Johnson that he knew who called in the complaint, this is not evidence that Norse

was aware it was McManis who called in the complaint.  There is no direct or circumstantial

evidence that anyone at Norse knew that McManis called in the OSHA complaint.  Even

McManis himself admitted that he did not have any knowledge of whether or not Taylor ever

---

[5]     Apparently, at the time of the OSHA investigation, Norse was also involved in litigation
with another individual.  Defendant's counsel, during Mr. Johnson's deposition, attempts to
show that when Mr. Muncy stated that he knew who did this, he could have been referring to the
individual involved in the litigation.

told Norse management about his concerns regarding the safety of the machines.  (McManis Dep. at 32).  Instead, McManis testified that it "would be my guess" that she told him that information. (McManis Dep. at 32-33).   Again, a "guess" or speculation is not sufficient to survive summary judgment.  Therefore, Plaintiff has failed to establish the second element of a *prima facie* case of retaliation.

### b.  Causal Connection Between the Protected Activity and the Adverse Employment Action.

Further, Plaintiff cannot establish a prima facie case of retaliation because she has not presented any evidence of a causal connection between McManis filing the OSHA complaint and his subsequent termination.  As the aforementioned discussion illustrates, there is no evidence that Norse even knew McManis filed the OSHA complaint.

 "In order to show a causal connection, a plaintiff must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action."  *Allen v. Michigan Dept. of Corrections*, 165 F.3d 405, 413 (6th Cir.1999); *see also EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir.1997).  Or in the case at bar, Plaintiff Chao must produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had McManis not filed the OSHA complaint.  The Sixth Circuit noted:

> Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation.

*Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000).

It is beyond question that employers make employment decisions based upon what they actually know to be true.  Likewise, common sense and experience establish that employers also make employment decisions on what they suspect or believe to be true.  *See generally NLRB v. Ritchie Mfg. Co.*, 354 F.2d 90, 98 (8th Cir. 1966) (the fact that the employer thought or believed the terminated employee was a union activist and that belief was the basis for employee's discharge was sufficient to establish violation of NLRA – need not show employer actually knew of employee's union activity); *see also Brock v. Richardson*, 812 F.2d 121, 124-25 (3d Cir. 1987) (discharge motivated by erroneous belief on part of employer that employee engaged in protected activity under the FLSA sufficient to trigger anti-retaliation provisions of the Act); *Donovan v. Peter Zimmer America, Inc.*, 557 F. Supp. 642, 652 (D.S.C. 1982) (discharge of three employees because employer not able to determine which of the three actually filed OSHA complaint violates anti-retaliation provisions of OSHA as to all three).

If Norse did not know or even have a belief that McManis filed the complaint, then there is no way he could have been terminated for filing it.  Nor can the Court draw the inference that he was terminated for filing the OSHA complaint if Norse was not aware that he filed it.  The most Plaintiff can demonstrate is that McManis expressed some concerns about the safety of the rim roll machine to his trainer Nancy Taylor and one other co-worker.  However, there is no evidence that either relayed the information to Norse management who was responsible for terminating McManis' employment.  Even as demonstrated in the aforementioned cases, the employer must have believed or suspected the employee had engaged in protected activity.  In this case, however, numerous employees of Norse were questioned as to whether they knew or believed they knew who filed the OSHA complaint and the investigator was not given any

-23-

indication that anyone at Norse suspected that McManis filed the OSHA complaint.

Further, Plaintiff cannot establish that the adverse action, McManis' termination, would not have occurred if he had not filed the OSHA complaint. Plant manager Carl Muncy testified that he fired McManis because of his anger problems, his attitude, his inability to meet production requirements, and because he "did not have the ability to take direction from females." (Muncy Dep. at 6-7). Plaintiff argues, however, that McManis was producing as much product at Taylor. Even construing the evidence in Plaintiff's favor that McManis was a productive employee and met production requirements, Plaintiff has not rebutted any of Norse's other reasons for terminating McManis' employment.

Defendant does admit that there is temporal proximity from the time McManis filed the complaint with OSHA on January 6, 2004 until McManis was terminated on February 13, 2004. However, in retaliation cases, temporal proximity alone is insufficient to establish a causal connection. *Ozier v. RTM Enters. of Ga., Inc.*, 2007 U.S. App. LEXIS 2965 (6th Cir. Feb. 8, 2007); *see also Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). The Court therefore finds that Plaintiff has failed to establish the fourth element of a *prima facie* case of retaliation, that there was a causal connection between the protected activity and the adverse employment action.

Applying the foregoing law, this Court finds that Plaintiff has failed to prove two of required elements of a *prima facie* case of retaliation: that the exercise of protected rights was known to defendant and there was a causal connection between the protected activity and the adverse employment action. Consequently, Defendant Norse is entitled to summary judgment in its favor with respect to Plaintiff's retaliation claim**.**

-24-

2.      **Pretext**

Even if Plaintiff could establish a *prima facie* case of retaliation, she cannot establish that

Defendant Norse's proffered non-retaliatory reasons for McManis' termination are a mere

pretext for retaliation. This Court has recognized that in order to demonstrate pretext, the

plaintiff must show: (1) that the defendant's proffered reasons had no basis in fact (i.e., they

actually did not occur); (2) that the proffered reasons did not actually motivate the plaintiff's

discharge; or (3) that the proffered reasons were insufficient to motivate plaintiff's discharge.

*See Thomas v. Speedway Superamerica, LLC*, 2006 U.S. Dist. LEXIS 15005 (S.D. Ohio March

30, 2006).

Defendant Norse's legitimate, non-discriminatory, non-retaliatory reasons for terminating

McManis' employment are his anger problems, his attitude, his inability to meet production

requirements, and his inability to take direction from females. (*See* Muncy Dep. at 6-7).

Defendant Norse has produced deposition testimony of McManis' co-workers that illustrate that

McManis could not or would not operate his machine efficiently by continually shutting it down;

that McManis refused to follow directions; that McManis had a temper.[6]

Plaintiff asserts that Defendant did not have a legitimate, non-discriminatory basis for

McManis' termination. Plaintiff argues that Defendant Norse seems to have changed its story as

to why McManis was terminated from originally stating it was because his production was

substandard to his attitude problem. (Pl.'s Mot. for Summ. J. at 17). Plaintiff argues if

---

[6] Defendant Norse points out that McManis' anger issues (e.g. threatening co-workers) were the basis for termination from a prior employer. Of interest, but not a determining factor in this case, is that McManis also filed a retaliation complaint with OSHA following that termination.

"McManis truly had an attitude problem, Norse would have terminated McManis when he displayed an attitude problem, not a month later." Plaintiff then continues to assert that the "direct and circumstantial evidence establish Norse terminated McManis because it knew or suspected he called in the OSHA complaint." (Pl.'s Mot. for Summ. J. at 17). It is true that McManis' attitude problems began shortly after beginning his employment, but they continued throughout his employment. Plaintiff's reasoning, however, is not persuasive. By the same reasoning, it could be argued that Norse did not terminate McManis for filing the OSHA complaint, or Norse would have terminated him immediately after filing the complaint, not a month later. Plaintiff has failed to set forth any substantial arguments, or evidence in support, to prove that Defendant Norse's reasons for McManis' termination were pretextual, therefore, Plaintiff's retaliation claim fails, and Defendant Norse is entitled to summary judgment.

In conclusion, the Court finds that Plaintiff Chao has failed to adduce evidence to support a *prima facie* case of retaliation by Defendant Norse sufficient to withstand Defendant's summary judgment motion. Additionally, Plaintiff's retaliation claim must fail because Plaintiff is unable to show that Defendant Norse's proffered non-retaliatory reasons for its actions are a mere pretext for retaliation. Defendant Norse is therefore entitled to summary judgment in its favor on Plaintiff's claim that Norse terminated McManis' employment in retaliation for reporting an alleged safety violation to OSHA.

## IV. CONCLUSION

Based on the aforementioned reasons, the Court **DENIES** Defendant's Motion to Strike

the Affidavit of Kathy Steward (Doc. 55) and **DENIES** Defendant Norse Dairy Systems' Motion

for Discovery (Conditional) to Re-Open and for Sanctions (Doc. 61).  As to the substantive

matter, the Court **GRANTS** Defendant Norse Dairy Systems' Motion for Summary Judgment

(Doc. 46) and **DENIES** Plaintiff Elaine L. Chao, Secretary of Labor's Motion for Summary

Judgment (Doc. 52).

      The Clerk shall remove Documents 46, 52, 55, and 61 from the Court's pending motions

list.

      The Clerk shall remove this case from the Court's pending cases list.

      **IT IS SO ORDERED.**

                        */s/ George C. Smith*
                        **GEORGE C. SMITH, JUDGE**
                        **UNITED STATES DISTRICT COURT**